UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
OZELL NEELY,

                      Plaintiff,

            -against-                          MEMORANDUM & ORDER
                                               12-CV-1523(JS)(AKT)
RMS RESIDENTIAL MORTGAGE SOLUTION,
L.L.C.; DAVID SKLAR; DUY DUONG; WEI
LI; BETHANY HOOD; FIS FORECLOSURE
SOLUTIONS; RESIDENTIAL MORTGAGE
SOLUTION, L.L.C.; BANK OF SCOTLAND,
P.L.C.; LLYODS BANKING GROUP;
MORTGAGE ELECTRONIC REGISTRATION
SYSTEM, INC.; SPECIALIZED LOAN
SERVICING, L.L.C.; FIRST AMERICAN
EQUITY LOAN SERVICES; FIRST
AMERICAN FINANCIAL CORPORATION;
FIRST AMERICAN TITLE; and JOHN
and JANE DOES 1-10,

                      Defendants.
--------------------------------------X
APPEARANCES
For Plaintiff:        Kenneth S. Pelsinger, Esq.
                      Kenneth S. Pelsinger, P.C.
                      East Meadow, NY 11554

                      William John Fallon, Esq.
                      P.O. Box 575
                      Rockville Centre, NY 11571

For Defendants
RMS, Sklar,
Duong, Li, BOS,
Llyods, MERS,
Specialized Loan
Servicing:            Kenneth J. Flickinger, Esq.
                      Knuckles Komosinski & Elliot L.L.P.
                      565 Taxter Road, Suite 590
                      Elmsford, NY 10523

For Defendants
Hood and FIS:         Kelly Koscuiszka, Esq.

Bracewell & Giuliani
1251 Avenue of the Americas, 49th Floor
New York, NY 10020

For First American
Defendants:          Richard Francis Hans, Esq.
                     Timothy H. Birnbaum, Esq.
                     Jodie E. Buchman, Esq.
                     DLA Piper L.L.P.
                     1251 Avenue of the Americas
                     New York, NY 10020


SEYBERT, District Judge:

Plaintiff Ozell Neely ("Plaintiff") commenced this action and filed a Complaint ("Complaint" or "Original Complaint") <u>pro se</u> on March 28, 2012 against RMS Residential Mortgage Solution, L.L.C. ("RMS"); Residential Mortgage Solution, L.L.C.[1]; David Sklar ("Sklar"); Duy Duong ("Duong"); Wei Li ("Li" and collectively the "RMS Defendants"); Bethany Hood ("Hood"); FIS Foreclosure Solutions ("FIS"); Bank of Scotland, P.L.C. ("BOS"); Llyods Banking Group ("Lloyds"); Mortgage Electronic Registration Systems, Inc. ("MERS"); Specialized Loan Servicing; First American Equity Loan Services; First American Financial Corporation; First American Title (together with First American Equity Loan Services and First American Financial Corporation the "First American Defendants"); and John and Jane Does 1-10 (collectively "Defendants") based

---

[1] Although the Complaint identifies Residential Mortgage Solution, L.L.C. as an entity independent from RMS, the only time it is mentioned is in the caption and the list of Defendants.

upon an alleged improper mortgage assignment, negligence regarding loan transactions, and fraudulent activity. Currently pending before the Court are three motions to dismiss the Complaint--one motion on behalf of the First American Defendants (Docket Entries 8-10); one motion on behalf of LPS Default Solutions, Inc. (formerly FIS) and Hood (Docket Entries 16-18); and one motion on behalf of RMS, Sklar, Duong, Li, BOS, Llyods, MERS, and Specialized Loan Serving (Docket Entries 21-22). In response to the various motions to dismiss, Plaintiff, now represented by counsel, has moved to amend the Complaint and provided the Court with a Proposed Amended Complaint ("PAC"). (Docket Entry 35.) For the following reasons Defendants' motions to dismiss are each GRANTED IN PART and DENIED IN PART, and Plaintiff's motion to file an Amended Complaint is likewise GRANTED IN PART and DENIED IN PART.

<u>BACKGROUND</u>

The motions to dismiss address only the Original Complaint, and whether the Court should grant Plaintiff leave to file an amended complaint is a separate issue. However, as the factual allegations in the Original Complaint provide a somewhat incomplete picture, the Court will outline the factual allegations in both the Original Complaint and the PAC, as well as the procedural posture of this case.

## I.  The Original Complaint

Prior to November 2006, Plaintiff owned real property located at 3498 Bertha Drive in Baldwin, New York (the "Property").  Sometime in 2006 or 2007, Plaintiff re-mortgaged the Property with Premium Capital Funding L.L.C. d/b/a Top Dot Mortgage ("Top Dot") in the amount of $650,000 (the "Top Dot Mortgage").  (Compl. ¶ 19, Ex. B.)  In October 2007, the Trustee on the Top Dot Mortgage, MERS, assigned the Top Dot Mortgage to RMS (the "Assignment").  (Id. Ex. B.)  Duplicate documents showing the Assignment were also recorded on September 28, 2009 and November 6, 2009.  (Id.)  The Assignment was signed by Hood, purportedly a MERS employee.  (Id. Ex. A.)  Plaintiff alleges that the Assignment was fraudulent and that Hood was not actually a MERS employee.  (Id. ¶ 21-32.)

Thereafter, in July 2009, RMS took out a mortgage of its own on the Property in favor of BOS in the amount of $654,872 (the "BOS Mortgage").  (Id. ¶ 33.)  RMS had represented to Plaintiff that the BOS Mortgage was entered in error and that a satisfaction would be duly recorded.  (Id. ¶ 36.)  As of December 12, 2011, however, the BOS Mortgage had not been satisfied.  (Id. ¶ 37, Ex. B.)

Based upon these facts, Plaintiff alleges causes of action sounding in unjust enrichment, negligence, breach of fiduciary duty, conversion, interstate transportation of stolen

4

property, conspiracy, and fraud. The Complaint does not differentiate between the various Defendants, nor does it specify which Defendants against whom Plaintiff alleges his causes of action. However, the Court reads the Complaint to assert the following claims: (1) unjust enrichment against RMS for receiving mortgage funds from BOS ("Claim #1"); (2) negligence against RMS, MERS, Hood, and FIS in connection with the Assignment ("Claim #2"); (3) breach of fiduciary duty against MERS, Hood, and FIS in connection with the Assignment ("Claim #3); (4) conversion against the RMS Defendants for "convert[ing] the funds totaling $654,972 [p]lus interest from BOS for their own benefit" ("Claim #4"); (5) interstate transportation of stolen property against the RMS Defendants ("Claim #5"); (6) conspiracy, presumably asserted against all of the Defendants ("Claim #6"); and (7) fraud, although it is unclear against whom Plaintiff brings a fraud claim ("Claim #7").

## II. The PAC

In the Proposed Amended Complaint, Plaintiff alleges that in 2006 Top Dot approached him regarding re-mortgaging the Property. (PAC ¶ 32.) Top Dot then inflated Plaintiff's income in the relevant loan documents and over-valued the Property. (Id. ¶¶ 42-44.) Top Dot also failed to provide Plaintiff with statutorily-required disclosure statements. (Id. ¶¶ 45, 49-51.)

On November 22, 2006, Plaintiff executed a mortgage in the amount of $650,000 to MERS as nominee for Top Dot. (Id. ¶ 46.) That same day, Plaintiff also executed and delivered an adjustable rate mortgage note in the amount of $650,000 to Top Dot with an annual interest rate of 12.5% and monthly payments of $6,937.18. (Id. ¶ 47.) The "subject mortgage loan," as Plaintiff characterizes it (a/k/a the Top Dot Mortgage), was a closed-end credit transaction in which Top Dot provided Plaintiff a $650,000 mortgage loan to refinance the Property. (Id. ¶ 48.)

In 2009, MERS, with the signature of Hood, assigned the subject mortgage loan to RMS (a/k/a the Assignment). (Id. ¶¶ 57, 59.) Plaintiff alleges that at the time of the Assignment, Hood was employed by FIS, now LPS Default Solutions. (Id. ¶ 60.) He also asserts that the Assignment did not include transfer of the corresponding note. (Id. ¶ 62.)

Further, and although the Assignment did not occur until 2009, RMS began foreclosure proceedings against Plaintiff as early as 2007. (Id. ¶ 65.) A Judgment of Foreclosure and Sale was entered in RMS's favor in New York State Supreme Court, Nassau County on May 20, 2008. (Id. ¶ 66.) After that Judgment of Foreclosure, but before any public sale, RMS obtained a mortgage loan in the amount of $654,872 secured by BOS (a/k/a the BOS Mortgage). (Id. ¶ 71.) Defendant Duong prepared those

loan documents, Defendant Li notarized them, and Defendant Sklar executed and delivered the loan documents to BOS on behalf of RMS. (Id. ¶¶ 73-75.) The First American Defendants then insured and recorded the BOS Mortgage. (Id. ¶ 76.)

Thereafter, RMS, Sklar, Duong, and Li advised Plaintiff that the BOS Mortgage was a clerical error and that a satisfaction would be entered. (Id. ¶ 79.) To date, no such satisfaction has been recorded. (Id. ¶ 80.)

The PAC adds Top Dot and Citibank, N.A. ("Citibank")[2] as defendants and asserts the following causes of action: (1) a claim against RMS and Top Dot for failure to provide a "Notice of Cancellation" as required by the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA") and Federal Reserve Board Regulation Z; (2) a claim against RMS and Top Dot for violation of the New York State Deceptive Acts and Practices Statute, as codified by General Business Law § 349 for misrepresentations and inflating Plaintiff's income in connection with obtaining the Top Dot Mortgage; (3) a claim against RMS and Top Dot for acting unfairly, dishonestly, and inefficiently in assessing Plaintiff with particular fees regarding the Top Dot Mortgage; (4) a claim against RMS and Top Dot for violation of the Home

---

[2] It is unclear what involvement, if any, Citibank had in any of Plaintiff's allegations or why Plaintiff seeks to hold Citibank liable. The only relevant information Plaintiff provides regarding Citibank is that it is a subordinate mortgage holder. (PAC ¶ 83.)

Ownership Equity Protection Act, 15 U.S.C. § 1639 ("HOEPA"), in issuing an adjustable rate mortgage loan to Plaintiff which was based upon Plaintiff's income information allegedly provided to Top Dot and which Defendants took no measures to verify; (5) negligence against RMS and Top Dot in the underwriting of the consumer credit transaction and subsequent approval of Plaintiff's loan application; (6) a claim against RMS and Top Dot for violation of New York State Banking Law for failing to make an inquiry or independently verify Plaintiff's income, employment, or other relevant information; (7) a claim of fraud against MERS, Hood, LPS, and RMS for the "illegal and unlawful assignment" of the Top Dot Mortgage; (8) a claim of fraud against RMS, Sklar, Doung, Li, and First American for their actions in connection with executing and delivering a mortgage to BOS secured by encumbering the Property and recording the assignment while an automatic stay was in effect; (9) a claim of unjust enrichment by RMS in the amount of $654,872; (10) a claim of conversion against RMS because the BOS Mortgage was taken from Plaintiff's equity in the subject premises and converted into funds transferred to RMS; (11) a claim against Top Dot, RMS, and Citibank for violation of the New York State Real Property Actions and Proceedings Law ("RPAPL") because the assignment from MERS to RMS was illegal and a nullity; and (12) a claim against BOS and Llyods to quiet title.

III.  Procedural Posture

       On June 30, 2009, Plaintiff filed a voluntary petition
for relief under Chapter 11 of the Bankruptcy Code, Case No. 09-
74877, in the United States Bankruptcy Court for the Eastern
District of New York.  (Id. ¶ 67; Hans Aff. Ex. A[3].)  As such,
the Bankruptcy Court stayed all adversary proceedings, including
any foreclosure action against the Property.  (PAC ¶ 69.)  Also
as part of the bankruptcy action, Plaintiff filed the requisite
Schedules of Assets and Liabilities (the "Schedules").  On July
21, 2009 he filed Schedule A, in which Plaintiff listed the
Property as having a value of $600,000 and a secured claim
against it in the amount of $845,490.80.  (Hans Aff. Ex. B.)  In
Schedule B, Plaintiff lists as his only personal property cash,
household goods, clothing apparel, jewelry, motor vehicles, and
an airplane.  (Id.)

       On October 23, 2009, Plaintiff's bankruptcy case was
converted from Chapter 11 to Chapter 7.  (PAC ¶ 77.)  On March
25, 2010, RMS brought a motion for relief of the automatic stay,
relying on the assignment of the mortgage from MERS to RMS, so

---

[3] The respective motions to dismiss each include an affirmation
or declaration attaching the docket sheet for the bankruptcy
proceedings.  For ease of reference, the Court will refer to
this document as Hans Aff. Ex. A.  Furthermore, the Court will
take judicial notice of the bankruptcy filings.  See Twentieth
Cen. Fox Film Corp. v. Marvel Enters., Inc., 220 F. Supp. 2d
289, 293 n.4 (S.D.N.Y. 2002) ("The Court takes judicial notice
of Marvel's filing in the bankruptcy proceeding under
Fed.R.Evid. 201.").

that it could continue foreclosure proceedings on the Property. (Id. ¶ 78.) On September 17, 2010, the Bankruptcy Court entered an amended conditional order which required the Plaintiff to make payments to RMS or risk termination of the automatic stay and foreclosure of the Property (the "Lift Stay Order"). (Hans Aff. Ex. C.) Plaintiff defaulted under the Lift Stay Order, and the Bankruptcy Court permitted RMS to continue foreclosure of the Property. (Hans Aff. Ex. D.)

On March 29, 2011, Plaintiff filed a motion to stay the lift stay pending appeal, which the Bankruptcy Court denied. (Id.) Plaintiff then submitted an appeal to this Court. (Id. Ex. A at Docket Entry 204.) This Court denied the stay and in December 2011, Plaintiff withdrew the appeal and the appeals case was closed. (Id. at Docket Entry 208.) On December 13, 2011, there was a foreclosure sale on the Property and RMS repurchased the premises. (PAC ¶ 82.)

In the interim, on January 5, 2011, the Chapter 7 Trustee filed a Notice of Abandonment, which delineated the real and personal property to which the Trustee abandoned all right and interest. (Han Aff. Ex. A at Docket Entry 179.) Later, on November 15, 2011, the Trustee filed a second Notice of Abandonment. (Id. Docket Entry 206.)

The pending motions to dismiss seek to dismiss the Original Complaint in its entirety based upon Plaintiff's lack of standing, judicial estoppel, and his failure to state a claim. The Court will first address the applicable legal standards before turning to the parties' arguments.

## I. Legal Standards

### A. Standard of Review under Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions. See Morrison v. Nat'l Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008). The Court must accept as true the factual allegations contained in the Complaint, but it will not draw argumentative inferences in favor of Plaintiff because subject matter jurisdiction must be shown affirmatively. See id.; Atlanta Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1998); Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).

A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. Makarova, 201 F.3d at 113. Pro se plaintiffs, although entitled to a more liberal pleading standard, must still comport with the procedural and substantive rules of law. See Jedrejcic v. Croatian Olympic Comm., 190 F.R.D. 60, 69 (E.D.N.Y. 1999).

B.  Standard of Review under Rule 12(b)(6)

In deciding Rule 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

Furthermore, in deciding a motion to dismiss, the Court is confined to "the allegations contained within the four

corners of [the] complaint." _Pani v. Empire Blue Cross Blue_
_Shield_, 152 F.3d 67, 71 (2d Cir. 1998). This has been
interpreted broadly to include any document attached to the
Complaint, any statements or documents incorporated in the
Complaint by reference, any document on which the Complaint
heavily relies, and anything of which judicial notice may be
taken. _See_ _Chambers v. Time Warner, Inc._, 282 F.3d 147, 152-53
(2d Cir. 2002) (citations omitted); _Kramer v. Time Warner, Inc._,
937 F.2d 767, 773 (2d Cir. 1991).

## II. Standing and Judicial Estoppel

### A. Standing to Bring Claims Regarding Top Dot Mortgage and the Assignment

In each of the three motions to dismiss, the
Defendants assert that Plaintiff lacks standing to bring his
current claims due to the prior bankruptcy proceedings. The
Court agrees that Plaintiff lacks standing to assert his claims
regarding the Top Dot Mortgage and the Assignment, namely Claim
#2 (negligence against RMS, MERS, Hood, and FIS) and Claim #3
(breach of fiduciary duty against MERS, Hood, and FIS).
However, Plaintiff does have standing to assert his claims
regarding the BOS Mortgage, namely Claim #1 (unjust enrichment
against RMS) and Claim #4 (conversion against the RMS
Defendants). In addition, the Court notes that Plaintiff has

withdrawn Claim #5 (interstate transportation of stolen property
against RMS) and Claim #6 (conspiracy).[4]

"When a debtor files for bankruptcy, an estate is
created that includes 'all legal or equitable interests of the
debtor in property as of the commencement of the case.'"
Rosenshein v. Kleban, 918 F. Supp. 98, 102 (S.D.N.Y. 1996)
(quoting 11 U.S.C. § 541(a)(1)).  As such, the Bankruptcy Code
requires that the debtor file a schedule of assets, which
includes all causes of action that could be brought by the
debtor.  11 U.S.C. § 521(1); see also Rosenshein, 918 F. Supp.
at 102.

Once an estate is created, the debtor can recover
property from the estate in two ways--(1) after confirmation of
a plan of reorganization, property that was part of the estate
will vest back to the debtor; or (2) property abandoned by the
bankruptcy Trustee.    See  11  U.S.C.  §§  1141(b)-(c),  554;
Rosenshein, 918 F. Supp. at 102.   However, property that the
debtor has failed to disclose can neither revert back to the
debtor after plan confirmation nor be abandoned by the Trustee;
rather, the estate retains an ownership interest in undisclosed
property.   Rosenshein, 918 F. Supp. at 102-03.   "Courts have
held that because an unscheduled claim remains the property of

_____

[4] The PAC does not include these claims and Plaintiff's
memorandum in support of the motion to amend acknowledges
withdrawal of claims.  (Docket Entry 35-4.)

14

the bankruptcy estate, the debtor lacks standing to pursue the claims after emerging from bankruptcy, and the claims must be dismissed." Id. at 103; accord Johns v. Local 32BJ, SEIU, No. 11-CV-0517, 2012 WL 3779908, at *2 (E.D.N.Y. Aug. 31, 2012). Accordingly, Defendants argue that Plaintiff lacks standing to bring his current causes of action because he did not disclose them in the Schedules.

The Court finds that Plaintiff could have, and should have, included in the Schedules his claims regarding the Top Dot Mortgage and the Assignment, and therefore Plaintiff lacks standing to bring such claims now. The operative language here is that the bankruptcy estate includes "[a]ll legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (emphasis added).

Plaintiff commenced bankruptcy proceedings on June 30, 2009. (PAC ¶ 67.) However, the Original Complaint alleges that transactions regarding the Top Dot Mortgage took place sometime in 2006 or 2007 (Compl. ¶ 19, Ex. B) and the PAC alleges the earlier year of 2006 only (PAC ¶ 32). In fact, according to the PAC, Plaintiff executed the Top Dot Mortgage on November 22, 2006. (PAC ¶ 46.) Presumably then, any wrongdoing with respect to the Top Dot Mortgage could have been disclosed in Plaintiff's bankruptcy case almost three years later.

With respect to the timeline of events surrounding the Assignment, Plaintiff provides more vague periods of time. Plaintiff apparently alleges that the Assignment occurred sometime in 2009. (Compl. ¶ 21; PAC ¶ 65.) However, Plaintiff also attaches to the Original Complaint a letter from the Office of the County Clerk stating that the Assignment took place on October 23, 2007 and was recorded on October 31, 2007. (Compl. Ex. B.) Subsequently, "duplicate" assignments were recorded, one dated September 28, 2009 and one dated October 21, 2009. (Id.)

Moreover, Plaintiff's own allegations show that was he aware of the Assignment before he filed for bankruptcy, or at the very least may have suspected its existence. According to Plaintiff, RMS commenced foreclosure proceedings as early as 2007. (PAC ¶ 65.) If, as Plaintiff claims, MERS was the only party with an interest in the Top Dot Mortgage, then Plaintiff should have thought it strange that RMS was trying to claim against the Property. What is more, the Assignment certainly became obvious shortly after Plaintiff filed for bankruptcy because on March 25, 2010, RMS moved for relief from the bankruptcy stay relying on the Assignment. (Id. ¶ 78.) Plaintiff then submitted motions and appeals attempting to block RMS from continuing with the foreclosure. (See generally Hans Aff. Ex. A.)

Any claims regarding the Assignment, even if speculative at the time of commencement, should have been disclosed. See Chartschlaa v. Nationwide Mut. Ins. Co., 538 F.3d 116, 122 (2d Cir. 2008) ("[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." (internal quotation marks and citation omitted)); Thomas v. JP Morgan Chase, N.A., No. 11-CV-3656, 2012 WL 2872164, at *8 (E.D.N.Y. July 11, 2012) ("While the bankruptcy case remained open, [plaintiff] had both the ability and the obligation to amend her filings to disclose any assets she had previously omitted."). As a result, Plaintiff now lacks standing to bring them.

Since Plaintiff lacks standing to bring his claims regarding the Top Dot Mortgage and the Assignment, the Court may dismiss them. However, the Court may also stay this action to allow Plaintiff to re-open his bankruptcy case and properly disclose them. See Johns, 2012 WL 3779908, at *2 (after finding that plaintiff lacked standing, court considered whether dismissal or stay would be appropriate). Defendants assert that Plaintiff's claims should be dismissed under the doctrine of judicial estoppel. The Court agrees.

"Judicial estoppel lies when a party, after assuming a certain position in a legal proceeding, attempts to assume a contrary position." Rosenshein, 918 F. Supp. at 104 (quoting In

re Hoffman, 99 B.R. 929, 935 (N.D. Iowa 1989)) (internal quotation marks omitted). Courts have applied this doctrine to instances in which the debtor failed to disclose a claim in bankruptcy proceedings and subsequently sought to invoke the claim in a separate suit. See id. (collecting cases). Application of judicial estoppel, however, is not absolute, and the Court is guided by two factors: "(1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that position was adopted by the first tribunal in some manner, such as by rendering a favorable judgment." Coffaro v. Crespo, 721 F. Supp. 2d 141, 145 (E.D.N.Y. 2010) (quoting Mitchell v. Washingtonville Cent. Sch. Dist., 190 F. 3d 1, 6 (2d Cir. 1999) (internal quotation marks omitted)).

In the case at bar, Plaintiff took an inconsistent position by initially asserting that he did not have any outstanding causes of action, despite his obligation to disclose his claims. See Thomas, 2012 WL 2872164, at *7 (plaintiff's claims that she did not have causes of action during bankruptcy case, but now does, cannot both be correct); Rosenshein, 918 F. Supp. at 104 (inconsistent position where debtors did not comply with "affirmative obligation" to disclose claims). In fact, in the Schedules, Plaintiff checked "none" under other personal property. (Hans Aff Ex. B.) The bankruptcy court then adopted

that position by discharging Plaintiff's debts and closing the bankruptcy case. See Ibok v. Siac-Sector, Inc., No. 05-CV-6584, 2011 WL 293757, at *7 (S.D.N.Y. Jan. 31, 2011) ("The bankruptcy court, in discharging Ibok and closing his case, adopted Ibok's stated position that he did not have any outstanding legal claims."); Rosenshein, 918 F. Supp. at 104-05 ("The bankruptcy court approved their plans of reorganization and discharged their debts on the basis of their incomplete disclosure of assets, thereby adopting their position.").

In addition, a motive to conceal may be inferred where, as here, the debtor failed to disclose a claim in bankruptcy and he was aware of the underlying circumstances giving rise to the claim. Rosenshein, 918 F. Supp. at 105.

Therefore, Plaintiff's claims arising out of the Top Dot Mortgage and the Assignment are DISMISSED WITH PREJUDICE, and Plaintiff's motion to amend the Complaint to replead these claims is DENIED.

B. Standing to Bring Claims Regarding BOS Mortgage

Plaintiff, however, also seeks to assert claims regarding the BOS Mortgage, which occurred after commencement of the bankruptcy case. The estate "is comprised of . . . [a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7). Thus, the estate includes only post-petition claims acquired by the

estate, not post-petition claims acquired by the debtor. See Rivera v. Ndola Pharm. Corp., 497 F. Supp. 2d 381, 396 (E.D.N.Y. 2007); EDP Med. Computer Sys., Inc. v. United States, No. 03-CV-3619, 2005 WL 3117433, at *4 (E.D.N.Y. Nov. 22, 2005); Niedermeier v. St. Joseph Hops., 188 Misc. 2d 107, 112, 725 N.Y.S.2d 799 (Sup. Ct. Erie Cnty. 2001).[5]

A post-petition claim belongs to the estate if it is "sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start." Segal v. Rochelle, 382 U.S. 375, 380, 86 S. Ct. 511, 15 L. Ed. 2d 428 (1966). Here, Plaintiff's claims regarding the BOS Mortgage did not begin to accrue until at least July 2009 when RMS took out the BOS Mortgage on the Property. See White v. City of Mount Vernon, 221 A.D.2d 345, 346, 633 N.Y.S.2d 369 (2d Dep't 1995) ("A cause of action for conversion accrues when the conversion takes place."); Congregation Yetev Lev D'Satmar v. 26 Adar N.B. Corp., 192 A.D.2d 501, 503, 596 N.Y.S.2d 435 (2d Dep't 1993) (A cause of action for unjust enrichment accrues "upon the occurrence of the wrongful act giving rise to a duty of restitution."). Further, and while the BOS Mortgage may relate to the Top Dot Mortgage,

---

[5] As the cited cases demonstrate, although some courts have found no distinction between the debtor and the estate in a Chapter 11 case, see In re Griseuk, 165 B.R. 956 (Bankr. M.D. Fla. 1994), New York courts do make this distinction.

the two transactions were independent.  See Rivera, 497 F. Supp. 2d at 397 (that plaintiff would have to refer to pre-petition events did not necessarily mean that property belonged to estate).  Accordingly, they are not "sufficiently rooted in the past" to be property of the estate.  See Stanley v. Cmty. Bank, N.A., No. 08-CV-0925, 2009 WL 261333, at *3 (N.D.N.Y. Feb. 4, 2009) (finding that some claims were not rooted in pre-bankruptcy past).

The Court notes that RMS obtained the BOS Mortgage in July 2009, before Plaintiff's Chapter 11 bankruptcy case was converted to Chapter 7 in October 2009.[6]  However, even when a case is converted from Chapter 11 to Chapter 7, the proper inquiry is whether claims arising after commencement and before conversion were part of the estate or belonged to the debtor. See, e.g., In re Strada Design Assocs., Inc., 326 B.R. 229, 235-36 (Bankr. S.D.N.Y. 2005); In re Durrett, 187 B.R. 413, 416 (Bankr. D.N.H. 1995).  As the Court has found that Plaintiff's claims regarding the BOS Mortgage--i.e., Claim #1 for unjust enrichment against RMS and Claim #4 against the RMS Defendants for conversion--belonged to Plaintiff, he does have standing to bring these claims.

---

[6] Presumably allegations in the PAC regarding Duong, Li, and Sklar's involvement in the BOS Mortgage documentation and the First American Defendants' insurance and recordation of the BOS Mortgage occurred around this same time period in July 2009.

III.  Remaining Claims under the Original Complaint

Since Plaintiff has standing to bring Claims #1 and 4, the next inquiry is whether Plaintiff has sufficiently stated a claim for relief.  In addition, Plaintiff has alleged a very vague claim for fraud (Claim #7).  As Defendants have also moved to dismiss Plaintiff's fraud claim, the Court will address whether Plaintiff has sufficiently stated a claim for fraud as well.

A.  Fraud

Beginning, first, with Plaintiff's fraud claim, the Court agrees with Defendants that this claim, as pled in the Original Complaint, should be dismissed.

Federal Rule of Civil Procedure 9(b) requires that a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake."  FED. R. CIV. P. 9(b).  If there are multiple defendants potentially implicated in the fraud, "the complaint should inform each defendant of the nature of his alleged participation in the fraud."  DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987).

The elements of common law fraud under New York law are: "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4)

the plaintiff suffered damage as a result of such reliance." Banque Arabe et Internationale D'Investissement v. M.D. Nat'l Bank, 57 F.3d 146, 153 (2d Cir. 1995). Therefore, Rule 9(b) requires that Plaintiff specifically plead the circumstances constituting fraud, with respect to each of the Defendants, according to these elements.

Plaintiff's fraud claim can be summed up as follows:

75. Defendant engaged in a scheme to steal money from plaintiff, as described more fully above[.]

76. At the time Defendant perpetrated the scheme on plaintiff, plaintiff was ignorant of the fact that the automatic stay had been violated.

77. As a proximate result of the fraudulent conduct of defendants, Plaintiff has been damaged in an amount to be proven at trial, but in the event [sic] in an amount in excess of $1,000,000.

(Compl. ¶¶ 75-77.) As these allegations demonstrate, Plaintiff first refers to "Defendant" without explanation as to which Defendant he is referring, and then alleges damages due to the fraudulent conduct of "defendants." See Meisel v. Grunberg, 651 F. Supp. 2d 98, 120 (S.D.N.Y. 2009) ("Normally, a plaintiff's reliance on blanket references to acts or omissions by all defendants fails to provide those defendants with fair notice of the nature of their alleged participation in the fraud."). Plaintiff also generally refers to allegations made previously

in the Complaint, but he does not point to any specific paragraphs or misrepresentations. See Brownstone Inv. Grp., L.L.C. v. Levey, 468 F. Supp. 2d 654, 660 (S.D.N.Y. 2007) (general reference to another paragraph in the complaint did not clearly refer to any statement or representation). In addition, the seventy-sixth paragraph seems to generally refer to transactions regarding the BOS Mortgage. However, it is unclear whether Plaintiff intends to assert fraud with respect to the BOS Mortgage as well as the Top Dot Mortgage and the Assignment, or only as to the BOS Mortgage. The Complaint uses the word "fraud" several times, including in connection with the Assignment (Compl. ¶ 2), but there are few substantive allegations beyond mere statements that a fraud has occurred (id. ¶¶ 1, 3). The multitude of uncertainties demonstrates that Plaintiff has not pled fraud with specificity, requiring dismissal.

   B.  Unjust Enrichment

        The First American Defendants, the RMS Defendants, BOS, Llyods, MERS, and Specialized Loan Servicing also moved to dismiss Plaintiff's cause of action sounding in unjust enrichment for failure to state a claim.[7] Their motions are DENIED in this respect.

_____

[7] Although at one point Plaintiff infers that all of the aforementioned Defendants were unjustly enriched (Compl. ¶ 1),

"Unjust enrichment is an equitable remedy that is available in cases where there is no contract between the parties." Labajo v. Best Buy Stores, L.P., 478 F. Supp. 2d 523, 530 (S.D.N.Y. 2007). The Complaint alleges that the RMS Defendants were unjustly enriched because they received approximately $654,872 from the BOS Mortgage by improperly taking out a second mortgage while Plaintiff still owned the Property.

Under New York law, to state an unjust enrichment claim "the plaintiff must allege '(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or [benefit] to the plaintiff.'" Bazak v. Intern. Corp. v. Tarrant Apparel Grp., 347 F. Supp. 2d 1, 3-4 (S.D.N.Y. 2004) (quoting Golden Pac. Bancorp v. Fed. Deposit Ins. Corp., 273 F.3d 509, 519 (2d Cir. 2001) (alteration in original)).

Plaintiff has sufficiently pled the first element because he asserts that the RMS Defendants were enriched by receiving $654,872. See Labajo, 478 F. Supp. 2d at 531 (pleading that defendants were enriched by realizing millions of dollars from magazine promotion was sufficient).

his actual cause of action mentions only RMS. Therefore, the Court reads the claim of unjust enrichment to pertain only to the RMS Defendants.

He has also adequately pled the second and third elements. Enrichment is "at Plaintiff's expense" if "defendant received something of value which belongs to the plaintiff." Bazak, 347 F. Supp. 2d at 4 (internal quotation marks and citation omitted). At the time that the BOS Mortgage came into being, there had not been any foreclosure sale on the Property. As such, Plaintiff still owned the Property and enjoyed equity in it. The RMS Defendants therefore took out equity in Plaintiff's Property when the equity did not belong to them. Plaintiff also alleges that at least some of the Defendants represented that the BOS Mortgage was in error, but then never recorded any satisfaction. (Compl. ¶¶ 36-37.) "Under New York law, it is 'contrary to equity and good conscience' to enable a party to benefit from misleading representations." Waldman v. New Chapter, Inc., 714 F. Supp. 2d 398, 404 (E.D.N.Y. 2010). Accordingly, Plaintiff has sufficiently pled the third, and final, element of an unjust enrichment claim.

C. Conversion

Similarly, the First American Defendants, the RMS Defendants, BOS, Llyods, MERS, and Specialized Loan Servicing move to dismiss Plaintiff's cause of action sounding in

conversion for failure to state a claim.[8]   Their motions are
DENIED in this respect.

Plaintiff alleges that, based on the circumstances
surrounding the BOS Mortgage and the same general allegations
regarding the unjust enrichment claim, the RMS Defendants
committed the common law tort of conversion.   Specifically,
Plaintiff alleges that the RMS Defendants wrongfully took out
equity on the Property and converted it to funds given to RMS.

"According to New York law, '[c]onversion is the
unauthorized assumption and exercise of the right of ownership
over goods belonging to another to the exclusion of the owner's
rights.'"   Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400,
403-04 (2d Cir. 2006) (quoting Vigilant Ins. Co. of Am. v. Hous.
Auth., 87 N.Y.2d 36, 44, 637 N.Y.S.2d 342, 660 N.E.2d 1121
(1995)).   Typically the "goods" or property in question is a
"specific identifiable thing."   Harris v. Coleman, 863 F. Supp.
2d 336, 342 (S.D.N.Y. 2012) (internal quotation marks and
citation omitted).

Here Plaintiff alleges that the RMS Defendants
exercised ownership in the equity of Plaintiff's Property in the
specific amount of $654,872.   None of the Defendants raise any
issue as to whether equity in the Property is sufficiently

---

[8] As with Plaintiff's unjust enrichment claim, the Court reads
Plaintiff's claim of conversion to apply only to the RMS
Defendants.

tangible to be subject to conversion. In any event, at this stage Plaintiff has at least plausibly set forth a conversion claim. The equity interest allegedly converted was for the specific monetary amount of $654,872. See generally Regions Bank v. Wieder & Mastroianni, P.C., 526 F. Supp. 2d 411 (S.D.N.Y. 2007) (mortgage funds were subject to conversion). "Money may be the subject of conversion if it is specifically identifiable and there is an obligation to return it or treat it in a particular manner." Capital Distributions Servs., Ltd. v. Ducor Exp. Airlines, Inc., 440 F. Supp. 2d 195, 208 (E.D.N.Y. 2006).

In addition, "[w]here possession of the property is initially unlawful, conversion occurs when there is a refusal to return the property after a demand." Id. A liberal reading of the Complaint also demonstrates a refusal by the RMS Defendants to return the funds. (Compl. ¶¶ 36-37 ("Defendant represented to the Plaintiff that the mortgage from Bank of Scotland was nothing more than a clerical error that would be resolved, with a satisfaction to be duly recorded. To all relative dates that mortgage went unsatisfied and unrecorded as so verified by the Nassau County Clerk.").)

Therefore, Plaintiff has sufficiently alleged a claim for conversion against the RMS Defendants.

IV.  Motion to Amend the Complaint

Finally, Plaintiff, now through counsel, seeks to amend the Complaint.  The PAC, while it does differ from the Original Complaint in certain respects, essentially fleshes out Plaintiff's claims and provides more thorough factual allegations.

Courts should grant leave to amend "when justice so requires."  FED. R. CIV P. 15(a)(2).  Leave to amend should be granted unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility.  See Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001).  To determine whether an amended claim is futile, courts analyze whether the proposed pleading would withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeal, 282 F.3d 83, 88 (2d Cir. 2002).

As the Court has already held, Plaintiff lacks standing to assert his claims regarding the Top Dot Mortgage and the Assignment.  His additional factual allegations do not add anything new or reveal any facts that would change the previous standing analysis.  In fact, the Memorandum of Law in Support of Plaintiff's Motion for Leave to Amend his Complaint (Docket Entry 35-4) makes no mention of why Plaintiff has standing, and his reply memorandum (Docket Entry 43) asserts standing only as

to his fraud and conversion claims. Therefore, Plaintiff's
motion to amend the Complaint is DENIED with respect to the
following claims: violation of TILA and Federal Reserve Board
Regulation Z against Top Dot and RMS; violation of New York
State General Business Law § 349 against Top Dot and RMS;
wrongful assessment of fees against Top Dot and RMS; violation
of HOEPA against Top Dot and RMS; negligence against Top Dot and
RMS; violation of the New York State Banking Law against Top Dot
and RMS; and claims that the Assignment was a legal nullity
against Top Dot, RMS, and Citibank. The only outstanding issue,
then, is whether the Court should permit Plaintiff to amend his
Complaint with respect to his claims of unjust enrichment,
conversion, fraud, and his new claim to quiet title. For the
following reasons, Plaintiff's request is GRANTED with respect
to his unjust enrichment and conversion claims, but DENIED as to
his fraud and quiet title claims.

A.  Unjust Enrichment and Conversion

In the same token, Plaintiff's claims regarding unjust
enrichment and conversion were sufficient to survive a motion to
dismiss in the Original Complaint. Since his claims in the PAC
are essentially the same as those in the Original Complaint,
except with more substance and with factual allegations that
help to provide a more complete picture, Plaintiff's request to
amend the Complaint with respect to his unjust enrichment and

conversion claims is GRANTED.  The Court notes, however, that
the PAC asserts these claims against RMS only, not as against
all of the RMS Defendants.  The PAC separately defines RMS from
the other defendants (PAC ¶¶ 4-7), includes only RMS in the
title of both claims (id. at 32[9]), and uses "Defendant" in the
singular (id. ¶¶ 175, 179).  In other parts the PAC, specific
reference is made to the other Defendants, such as Duong, Wei,
and Li.  (Id. at 29.)  Although the Court liberally construed
Plaintiff's pro se Original Complaint, since Plaintiff is now
represented by counsel, "the Court has no obligation to construe
[the Proposed Amended] Complaint liberally," Nat'l Gear &
Piston, Inc. v. Cummins Power, Sys., L.L.C., 861 F. Supp. 2d
344, 370 (S.D.N.Y. May 17, 2012) (internal quotation marks and
citation omitted).

  B.  Fraud

    The PAC includes two claims of fraud, which the Court
will separately address according to the heightened pleading
standards under Rule 9(b) as expressed above.

    The PAC's seventh cause of action alleges a claim of
fraud against MERS, Hood, LPS and RMS in connection with the
Assignment.  More specifically, Plaintiff alleges that Hood and
LPS fraudulently misrepresented that Hood was an employee of

---

[9] The PAC does not include page numbers; however, the Court
refers to page numbers provided by the Electronic Case Filing
system.

MERS and that MERS, Hood, LPS, and RMS concealed the Assignment to effectuate foreclosure. As the Court has previously held, Plaintiff lacks standing to bring all claims regarding the Assignment. Any potential fraud or allegations regarding the legality or illegality of the Assignment should have been disclosed to the bankruptcy court.

The PAC's eighth cause of action alleges a claim of fraud against the RMS Defendants and the First American Defendants for "misrepresentations and concealment of facts from Plaintiff regarding the execution and delivery of the subject BOS mortgage by RMS and insuring and recording thereof while the automatic stay was in effect and prior to the public auction sale of the subject premises . . . ." (PAC ¶ 165.) The only relevant misrepresentation that the Court can find in this regard is that RMS, Sklar, Duong, and Li advised Plaintiff that the BOS Mortgage was a clerical error and that it would be resolved with a satisfaction. (Id. ¶ 79.)

Plaintiff has not pled any alleged statements made by the First American Defendants. Nor has Plaintiff pled with any particularity the alleged misstatements by the RMS Defendants. He does not specify the time or place of the supposed misrepresentation, and it is unclear whether Duong, Sklar, Li, or some other RMS employee told Plaintiff that the BOS Mortgage was a clerical error. See DiVittorio, 822 F.2d at 1247

(plaintiff must allege the time, place, speaker, and content of the alleged misrepresentation).

However, Plaintiff could potentially state a claim for fraud based upon alleged concealments. See Meisel, 651 F. Supp. 2d at 118. Such an action lies where the defendant had a duty to disclose material information due to a fiduciary relationship. See Kaufman v. Cohen, 307 A.D.2d 113, 119-20, 760 N.Y.S.2d 157 (1st Dep't 2003). "[A]bsent a fiduciary relationship between the parties, a duty to disclose arises only under the 'special facts' doctrine where one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair." Jana L. v. W. 129th St. Realty Corp., 22 A.D.3d 274, 277, 802 N.Y.S.2d 132 (1st Dep't 2005) (internal quotation marks and citation omitted). The special facts doctrine requires that the information was "peculiarly within in the knowledge of" the defendant and that plaintiff could not have discovered the information "through the exercise of ordinary intelligence." Id. at 278 (internal quotation marks and alterations omitted).

In the case at bar, Plaintiff has not alleged any fiduciary duty, but seems to rely on the special facts doctrine. For instance, he alleges that "Plaintiff was ignorant of the fact [that] the automatic stay obtained by Plaintiff in his bankruptcy proceedings was violated by the execution and

delivery of the subject BOS mortgage by RMS" and "Plaintiff was ignorant of the fact that the execution and delivery of the subject BOS mortgage by RMS and insuring and recording thereof was made prior to RMS purchase of the subject premises at the public auction sale."  (PAC ¶¶ 162, 164.)

However, key to whether Plaintiff may sustain his claim for fraudulent concealment is whether Plaintiff could have learned of the BOS Mortgage through the "exercise of ordinary intelligence."  Any mortgage or loan would have been public information.  See Apthorp Assocs. L.L.C. v. 309 W. End Assoc., L.L.C., 22 Misc. 3d 1132(A), *5, 881 N.Y.S.2d 361 (Sup. Ct. N.Y. Cnty. 2009) ("[B]ecause the facts that were allegedly concealed were matters of public record, and no fiduciary relationship existed between the parties, defendants' motion is granted.").  Furthermore, that Plaintiff was litigating bankruptcy and foreclosure proceedings implies that "[i]f nothing else, the 'exercise of ordinary intelligence' suggests a simply inquiry" by Plaintiff.  Jana L., 22 A.D.3d at 278.  In other words, Plaintiff's allegation suggests that fraudulent concealment by the RMS and First American Defendants encumbered the Property and prevented him from utilizing the equity to potentially stave off foreclosure.  But if Plaintiff had made any inquiries into encumbrances on the Property or how he could have fended off foreclosure, he would have become aware of the BOS Mortgage.

See <u>Austin v. Albany Law Sch. of Union Univ.</u>, 957 N.Y.S. 2d 833, 844, 2013 WL 45884 (Sup. Ct. Albany Cnty. Jan. 3, 2013) (special facts doctrine unavailing because plaintiffs could have discovered information through reasonable diligence). In any event, Plaintiff's recitation of the facts does not make clear when, but at some point the RMS Defendants purportedly represented to Plaintiff that the BOS Mortgage was entered in error. Therefore, Plaintiff was aware of the existence of the BOS Mortgage, and his failure to further inquire as to the status of satisfaction does not now subject the RMS and First American Defendants to liability for fraudulent concealment. Accordingly, Plaintiff's request for leave to amend the Complaint to include a claim of fraudulent concealment against the RMS and First American Defendants (and the attendant claim for punitive damages) is DENIED.

C. <u>Quiet Title</u>

Finally, Plaintiff's twelfth cause of action, lodged against BOS and Llyods, is to quiet title pursuant to New York State Real Property Actions and Proceedings Law ("RPAPL").[10] To state a claim to quiet title under the RPAPL, Plaintiff must allege:

---

[10] Allegations in the twelfth cause of action abruptly end and, therefore, it is not clear whether Plaintiff has filed the complete PAC.

> ([i]) the nature of the plaintiff's interest
> in the real property and the source of this
> interest; (ii) that the defendant claims or
> appears to claim an interest in the property
> adverse to the plaintiff's interest, and the
> nature of the defendant's interest; (iii)
> whether any defendant is known or unknown
> and whether any defendant is incompetent;
> and (iv) whether all interested parties are
> named and whether the judgment will or might
> affect other persons not ascertained at the
> commencement of the action.

Barberan v. Nationpoint, 706 F. Supp. 2d 408, 419 (S.D.N.Y. 2010).

In the case at bar, Plaintiff fails to properly allege an interest in the Property and the source of that interest. Plaintiff pleads that the "BOS mortgage was fraudulently obtained while Plaintiff was still the owner of the subject premises." (PAC ¶ 209.) This is insufficient, however, to show Plaintiff's current interest in the Property. See Guccione v. Estate of Guccione, 84 A.D.3d 867, 870, 923 N.Y.S.2d 591 (2d Dep't 2011) (plaintiff did not show interest where complaint alleged ownership at all relevant times but also contained factual allegation that plaintiff had sold the property). Plaintiff seeks to maintain a quiet title action, but the foreclosure action extinguished his legal title in the Property.[11] See Darnly v. Ameriquest Mortg. Corp., No. 06-CV-

---

[11] Plaintiff's quiet title claim does not contain any allegations regarding an interest in the Property via possession, or for any reason other than his interest at the time of the BOS Mortgage.

4265, 2010 WL 118143, at *2-3 (E.D.N.Y. Jan. 8, 2010) (under New York mortgage foreclosure law, debtor's interest in property extinguished by foreclosure sale); see also Boswell v. Bayrock Mortg. Corp., No. 11-CV-0821, 2012 WL 413849, at *7 (M.D. Ala. Jan. 19, 2012) ("Foreclosure of a mortgage divests the mortgagor of title or interest in the property covered by the mortgage as would permit an action to quiet title."). Accordingly, Plaintiff has not sufficiently pled proper interest in order to maintain a quiet title action, and his motion for leave to amend the Complaint with respect to this claim is DENIED.

## CONCLUSION

Defendants' motions to dismiss the Original Complaint are GRANTED IN PART and DENIED IN PART. They are GRANTED with respect to Claims #2 (negligence against RMS, MERS, Hood, and FIS), Claim #3 (breach of fiduciary duty against MERS, Hood, and FIS), and Claim #7 (fraud). They are DENIED with respect to Claim #1 (unjust enrichment against RMS) and Claim #4 (conversion against the RMS Defendants). Plaintiff has withdrawn Claims #5 and #6 for interstate transportation of stolen goods and conspiracy, respectively.

Furthermore, Plaintiff's motion to amend the Complaint is GRANTED as to his claims for conversion and unjust enrichment against RMS, but otherwise DENIED. Accordingly, the PAC now

replaces the Original Complaint and Plaintiff's claims for conversion and unjust enrichment against RMS survive.

The Clerk of the Court is directed to docket the PAC (Docket Entry 35-3) as a separate docket entry titled "Amended Complaint" and to terminate all Defendants except for RMS Residential Mortgage Solution, LLC and Residential Mortgage Solution, LLC.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     February   26  , 2013
           Central Islip, NY