```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
OZELL NEELY,

                    Plaintiff,

          -against-                    MEMORANDUM & ORDER
                                       12-CV-1523(JS)(AKT)
RESIDENTIAL MORTGAGE
SOLUTION, LLC.,

                    Defendant.
----------------------------------X
APPEARANCES
For Plaintiff:      Kenneth S. Pelsinger, Esq.
                    Kenneth S. Pelsinger, P.C.
                    3601 Hempstead Turnpike, Suite 410
                    Levittown, NY 11756

For Defendant:      Kenneth J. Flickinger, Esq.
                    Jordan Jayce Manfro, Esq.
                    Knuckles, Komosinski & Elliott, LLP
                    565 Taxter Road, Suite 590
                    Elmsford, NY 10523
```

SEYBERT, District Judge:

Plaintiff Ozell Neely ("Neely") commenced this action pro se on March 28, 2012 against Residential Mortgage Solution, LLC ("RMS") and others alleging, among other claims, that his real property was converted and that he was unjustly enriched because RMS improperly executed a mortgage in favor of another bank before the property was sold at a foreclosure sale.  Pending before the Court are:(1) RMS's motion for summary judgment (Docket Entry 76); (2) Neely's motion for leave to file a Second Amended Complaint (Docket Entry 85); and (3) Neely's motion for an order of attachment (Docket Entry 89).  As discussed below, RMS's motion

for summary judgment is GRANTED and Neely's motions are both FOUND TO BE MOOT.

BACKGROUND[1]

On July 7, 2005, Neely purchased real property located at 3498 Bertha Drive in Baldwin, New York (the "Property"). (Def.'s 56.1 Stmt., Docket Entry 69, ¶ 1.)  On November 22, 2006, Neely obtained a loan from Premium Capital Funding d/b/a Top Dot Mortgage ("Top Dot") in the amount of $650,000, which was secured by a mortgage on the Property (the "Top Dot Mortgage").  (Def.'s 56.1 Stmt. ¶ 2.)  RMS purchased the Topdot Mortgage on December 27, 2006[2] and six months later, Plaintiff defaulted.[3]  (Def.'s 56.1

---

[1]  The following facts are drawn from the parties' 56.1 statements and their affidavits and other evidence in support.

[2]  Neely disputes that RMS purchased the Top Dot Mortgage on the ground that the Top Dot Mortgage was fraudulently assigned to RMS. (Pl.'s 56.1 Stmt., Docket Entry 69-1, ¶ 3.)  However, Neely's fraud claim was already dismissed in the Court's prior Order. Neely v. RMS Residential Mortgage Solution, L.L.C., No. 12-CV-1523, 2013 WL 752636, at *14 (E.D.N.Y. Feb. 26, 2013).

[3]  In his 56.1 Statement, Neely denies that he defaulted on the Top Dot Mortgage and claims that an issue of fact exists as to whether or not he defaulted.  (Pl.'s 56.1 Stmt. ¶ 4.)  However, Plaintiff cites no evidence in support of his claim and does not cite to any admissible evidence.  Therefore, the fact that Neely defaulted on the Top Dot Mortgage is deemed admitted. Folkes v. N. Y. Coll. of Osteopathic Med. of N. Y. Inst. of Tech., 214 F. Supp. 2d 273, 281 (E.D.N.Y. 2002).  Where "the opposing party [ ] fails to controvert a fact so set forth in the [ ] Rule 56.1 statement, that fact will be deemed admitted." Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Litchhult v. USTRIVE2, Inc., No. 10-CV-3311, 2013 WL 3491076, at *2 (E.D.N.Y. July 10, 2013).

2

Stmt. ¶¶ 3, 4.) On October 11, 2007, RMS commenced a foreclosure action against Neely for non-payment and Judgment of Foreclosure and Sale was entered in RMS's favor in New York State Supreme Court, Nassau County on May 20, 2008. (Def.'s 56.1 Stmt. ¶¶ 5, 6.) A foreclosure sale was then scheduled for June 30, 2009. (Def.'s 56.1 Stmt. ¶ 7.) On the day the sale was scheduled to occur, however, Neely filed for bankruptcy in the Eastern District of New York, stopping the sale. (Def.'s 56.1 Stmt. ¶ 8.)

On September 3, 2009, a mortgage in the amount of $654,872.00 was recorded against the Property with the Nassau County Clerk's Office in favor of Bank of Scotland, PLC ("BOS") as Mortgagee, and RMS as mortgagor (the "BOS Mortgage"). (Def.'s 56.1 Stmt. ¶ 9.) RMS claims that the BOS Mortgage was executed because of a credit agreement between RMS and BOS. (Def.'s 56.1 Stmt. ¶ 10.) As a matter of policy, "when RMS acquired properties through foreclosure, [it] would record a mortgage in favor of BOS to perfect a security interest in any such property in favor of BOS." (Def.'s 56.1 Stmt. ¶ 10.) RMS's Managing Director, David Sklar, explained in a sworn affidavit that although the mortgage was executed, no money was actually transferred between RMS and BOS. (Sklar Aff., Docket Entry 76-4, at 3.) In other words, the mortgage only served as a security interest in favor of BOS in exchange for the credit BOS provided to RMS pursuant to the credit agreement. Neely claims that the BOS Mortgage was "fraudulently

3

and illegally made because, among other reasons, a bankruptcy stay was in effect at that time." (Pl.'s 56.1 Counterstmt., Docket Entry 82-3 ¶ 9.)

On January 3, 2011 the Bankruptcy Court granted RMS relief from the automatic stay, and on December 13, 2011 RMS acquired title to the Property at the foreclosure sale. (Def.'s 56.1 Stmt. ¶¶ 11, 12.)

The parties dispute when Neely learned of the BOS Mortgage. RMS claims that Neely did not become aware of the BOS Mortgage until December 12, 2012 at the earliest, (Def.'s 56.1 Stmt. ¶ 13), while Neely claims he learned of the existence of the BOS Mortgage on December 11, 2011, when he received a letter from the Nassau County Clerk's Office. (Pl.'s 56.1 Counterstmt. ¶ 13.)

According to Neely, in April 2011, Lauren Horn, a BOS Vice President, contacted him and advised him that the BOS Mortgage was "merely a clerical error." (Neely Aff., Docket Entry 81, ¶ 8.) Horn then mailed Neely a copy of an unrecorded Release of Mortgage document which was endorsed by Horn on behalf of BOS. Id.; see Pelsinger Aff., Docket Entry 82, Ex. 10.)

The only two unresolved claims in this action are Neely's conversion and unjust enrichment causes of action. See Neely v. RMS Residential Mortgage Solution, L.L.C., No. 12-CV-1523, 2013 WL 752636, at *14 (E.D.N.Y. Feb. 26, 2013). RMS moves for summary judgment seeking to dismiss both remaining claims. (Def.'s Br.,

4

Docket Entry 76-3, at 1-2.) RMS specifically argues that Neely's conversion claim must be dismissed as a matter of law because New York law does not recognize a cause of action for conversion when the object of the alleged conversion was equity in real property. (Def.'s Br. at 1.) Defendant further argues that Neely's unjust enrichment claim also fails because (1) RMS did not receive any money as a result of the BOS Mortgage, and thus was not enriched, and (2) Neely suffered no damages because he had no equity in the Property and could not have redeemed it from foreclosure. (Def.'s Br. at 6-9.)

## DISCUSSION

The Court will first address the applicable legal standard on a motion for summary judgment before turning to the parties' arguments.

### I. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible

5

factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." Id.; see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). A genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To defeat summary judgment, "the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 256). "[M]ere speculation or conjecture as to the true nature of the facts" will not overcome a motion for summary judgment. Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986); see also Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) ("Mere conclusory allegations or denials will not suffice." (citation omitted)); Weinstock, 224 F.3d at 41 ("[U]nsupported allegations do not create a material issue of fact."). "The same standard applies where, as here, the parties filed cross-motions for summary judgment . . . ." Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001) (citing Terwilliger v. Terwilliger, 206 F.3d 240, 244 (2d Cir. 2000)). Thus, even if both parties move for summary judgment and assert

6

the absence of any genuine issues of material fact, "a district court is not required to grant judgment as a matter of law for one side or the other." Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993). "Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Morales, 249 F.3d at 121 (citation omitted).

III. Unjust Enrichment

A claimant seeking relief under a theory of unjust enrichment in New York must demonstrate "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." In re Mid-Island Hosp., Inc., 276 F.3d 123, 130 (2d Cir. 2002) (internal quotation marks and citation omitted). RMS argues that Plaintiff's unjust enrichment claim must be dismissed as a matter of law because RMS did not receive any money as a result of the BOS Mortgage transaction and therefore RMS could not have been unjustly enriched. (Def.'s Br. at 6.) In support of that factual assertion, RMS offers the affidavit of David Sklar, the Managing Director of RMS, and an excerpt from a November 2004 credit agreement between RMS and BOS. (Sklar Aff. at 3.) Sklar states in his affidavit that because of the credit agreement between RMS and BOS, RMS would execute a mortgage in favor of BOS as a matter of policy whenever "RMS liquidated a mortgage loan and acquired

7

title to the secured property through foreclosure." (Sklar Aff. at 3.) Thus, according to Sklar, "[t]here was no [actual] transfer of money from BOS to RMS in consideration of the BOS Mortgage." Id. In response, Neely argues that "[n]o real discovery was conducted on [this] issue except for disclosure of the [ ] Credit Agreement entered into between RMS and BOS," but that a material issue of fact exists as to whether RMS received compensation from the BOS Mortgage because: (1) the BOS Mortgage was executed while Plaintiff still owned the Property and (2) Plaintiff was told by an RMS employee that the BOS Mortgage was a "clerical error" and did not mention the credit agreement. (Pl.'s Opp. Br., Docket Entry 80, at 7.[4])

Although it remains a mystery why the BOS Mortgage was executed while Plaintiff was still the owner of the Property, there is not a legitimate factual dispute about whether RMS received compensation as a result of the BOS Mortgage. RMS submitted a sworn affidavit from its managing director explaining that RMS did not receive any money from the BOS Mortgage because the BOS Mortgage only served as a security interest in favor of BOS. In response, Neely only volunteers that no discovery was taken on this issue. "A party resisting summary judgment on the ground

---

[4] Since Plaintiff's counsel neglected to include page numbers in his brief, cited page numbers in Plaintiff's brief shall refer to the numbers generated by the Electronic Case Filing system.

that it needs additional discovery in order to defeat the motion must submit an affidavit pursuant to Federal Rule of Civil Procedure 56(d) (formerly Rule 56(f)), showing: '(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.'" Lunts v. Rochester City Sch. Dist., 515 F. App'x 11, 13 (2d Cir. 2013) cert. denied, 134 S. Ct. 429, 187 L. Ed. 2d 282 (2013) (quoting Meloff v. N.Y. Life Ins. Co., 51 F.3d 372, 375 (2d Cir. 1995)). Neely does not request additional discovery to confirm or invalidate Sklar's sworn statement, nor does he explain what discovery was actually conducted. The parties had sixteen months to conduct discovery and Plaintiff admits that the credit agreement that Sklar references in his affidavit was produced to Neely.[5] The first element of an unjust enrichment claim is that "the Defendant benefitted." Mid-Island Hosp., 276 F.3d at 130. Why Plaintiff's

---

[5] See Cornell v. Kapral, 483 F. App'x 590, 591 (2d Cir. 2012) (Denying the plaintiff's request to take additional discovery in response to a summary judgment submission; "[t]he record makes clear that in the six months that elapsed between the parties' initial disclosures . . . and the defendants' motion for summary judgment . . . neither party served a discovery demand or noticed a deposition."); See also Forde v. Donahoe, No. 10-CV-2445, 2012 WL 1020038, at *15 (E.D.N.Y. Mar. 26, 2012) (denying a motion for additional discovery after eight months of discovery elapsed, and because the plaintiff provided no explanation as to what she believed additional discovery would show).

9

counsel did not attempt to confirm that this element was satisfied during the course of the sixteen-month discovery process is unknown.  However, the fact that Lauren Horn, a BOS Vice President, contacted Neely in April 2011 and told him the BOS Mortgage was a clerical error does not create a factual dispute as to whether RMS received a benefit from the BOS Mortgage because it does not contradict Sklar's sworn statement.  In fact, the existence of Horn's communication to Neely only makes it more surprising that Plaintiff's counsel did not seek to discover more information about the BOS Mortgage, which was the only basis for Plaintiff's claims.

Since there is no legitimate factual dispute that the first element of Plaintiff's unjust enrichment claim was not met, Defendant's motion for summary judgment is GRANTED as to Plaintiff's unjust enrichment claim.

II. Conversion

Defendant argues that Plaintiff's conversion claim must fail because New York Law does not recognize a claim for the conversion of real property. (Def.'s Br. at 7.)  The Court agrees. "Conversion is any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property." Regions Bank v. Wieder & Mastoiianni, P.C., 526 F. Supp. 2d 411, 413 (S.D.N.Y. 2007).  "To maintain a claim for conversion, a plaintiff must show: (1) the property

10

subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." Moses v. Martin, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004) (internal quotation marks and citation omitted). However, in New York "'[a]n action for conversion lies only with respect to personal, not real, property.'" E. River Sav. Bank v. Sec'y of Hous. & Urban Dev., 702 F. Supp. 448, 455 (S.D.N.Y. 1988) (quoting Boll v. Town of Kinderhook, 99 A.D.2d 898, 899, 472 N.Y.S.2d 496, 498 (3d Dep't 1984)); Dickinson v. Igoni, 76 A.D.3d 943, 945, 908 N.Y.S.2d 85, 88 (N.Y. 2010). Neely contends that he is not seeking to recover real property through his conversion claim, but rather an "equity interest" in the Property, the existence of which Plaintiff claims was evidenced by the BOS Mortgage. (Pl.'s Opp. Br. at 9.) But whether Neely seeks to recover the Property itself or an "equity interest" in the Property is a distinction without a difference. See Roemer & Featherstonhaugh P.C. v. Featherstonhaugh, 267 A.D.2d 697, 697, 699 N.Y.S.2d 603, 604-05 (3d Dep't 1999) ("whether the property claimed to have been converted is real property, as alleged in the complaint, or an interest or expectancy in a business opportunity, as plaintiff now alleges, conversion will not lie."); see also B & C Realty, Co. v. 159 Emmut Properties

LLC, 106 A.D.3d 653, 656, 966 N.Y.S.2d 402, 405 (1st Dep't 2013). The fact that Neely's conversion claim is focused on recovery of his former Property is evidenced by his recent motion seeking an order of attachment on the Property. (Docket Entry 89.) Since Neely's conversion claim seeks to recover an interest in real property it is not viable as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Docket Entry 76) is GRANTED and this case is DISMISSED WITH PREJUDICE. Neely's motion for leave to file a Second Amended Complaint (Docket Entry 85) and Neely's motion for an order of attachment (Docket Entry 89) are both FOUND TO BE MOOT. The Clerk of the Court is directed to enter judgment in favor of RMS and mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: October  20 , 2015
       Central Islip, NY